HERBERT B. BAILEY & another, trustees, *vs.* CHARLES J. MEADE & another.

Suffolk.    March 20, 1924. — September 26, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Landlord and Tenant,* Conveyance of landlord's interest in reversion after breach of covenant by tenant. *Assignment. Equity Jurisdiction,* Bill for instructions.

The executor of the will of one of two persons who, as tenants in common, had succeeded to the title in reversion to a one-fourth undivided interest in real estate described in a lease which purported to bind and inure to the benefit of the legal representatives and assigns of the lessors and of the lessees, respectively, after the end of the term of the lease and a breach by the lessee of covenants to keep the premises in good repair and to deliver them up in good condition at the end of the term, sold and conveyed, in accordance with a decree of the Probate Court, to his testator's cotenant all the interest which his testator had in the property at the time of his death. *Held,* that

(1) The covenants, having been broken previous to the time of the conveyance, had ceased to run with the land;

(2) The conveyance did not transfer the testator's interest in damages to be paid by the lessee for the breach of the covenants, and the executor still was entitled to share in such damages.

Certain trustees, by the consent of all parties interested, received from the lessee in the circumstances above described the amount of damages paid by him for breach of the covenants and filed in the Probate Court a petition for instructions as to what distribution should be made of the funds so received. The petition, among other allegations, contained a statement that, after the conveyance above described, the petitioners had paid from money in their hands belonging to the grantee the greater part of one-fourth of the expenses of repairs which the lessee had been bound to. make; that, between the end of the term of the lease and the date of the filing of the petition, they had paid out for such repairs a sum largely in excess of the amount recovered from the lessee for damages and interest, only a very small portion of which was expended in the period between the end of the term of the lease and the date of the conveyance above described; that during that period they had paid out for repairs only such part of the income as was absolutely necessary for repairs and that they had divided the balance among the beneficiaries. The grantee contended that by reason of these allegations he was equitably entitled to have the whole of the one-quarter share of the amount received from the lessee as damages. *Held,* that the facts alleged disclosed no equity in favor of the grantee.

PETITION, filed in the Probate Court for the county of Suffolk on August 20, 1923, seeking instructions as to the question described in the opinion.

The respondent Charles J. Meade, individually and as executor of the will of Helen I. Meade, filed a substitute answer admitting for the purposes of this petition the matters and facts set forth therein and joining in the prayers of the petition for instructions there sought.

The petition was heard by *Prest*, J.   By his order, a decree was entered that the petitioners pay the amount in dispute, $1,412.14, less charges of administration, to Willard Pleis Smith.   Charles J. Meade appealed.

*F. T. Leahy*, for the petitioners, stated the case.

*F. W. Bacon*, for the respondent Charles J. Meade.

*W. B. Grant*, (*J. B. Crawford* with him,) for the respondent Willard Pleis Smith.

CROSBY, J.   This is a petition for instructions by the trustees under the will of Emeline S. Jenkins whether a certain fund in their hands (which arose from an award for damages against a tenant for failure to make repairs required under a written lease) should be paid to the respondent Willard Pleis Smith, or to the respondent Charles J. Meade. Specifically stated, the question is, whether $1,412.14, less administration charges, should be paid to the respondent Meade, who is executor, legatee and devisee under the will of Helen I. Meade, a beneficiary under the will of Emeline S. Jenkins, or to Smith, another beneficiary under the same will.

The pertinent facts involved are as follows: Emeline S. Jenkins in 1896 was the owner in fee as tenant in common of an undivided one half interest in certain real estate in Boston.   She and her cotenants made a lease of the estate for twenty years to one Ginn.   This lease, which expired April 1, 1917, contained covenants by the lessee to keep the premises in good repair and to deliver them up in the same condition at the end of the term; and they purported to bind and inure to the benefit respectively of the legal representatives and assigns of the lessors and lessees.   The covenant was broken by Ginn and his successors in title,

and they have paid to the petitioners under an award as a result of such breach $11,408.15 damages, $3,232.31 interest, and $64.75 costs. After deducting legal expenses, and the share of the cotenants, there remain $5,648.56 to be distributed among those entitled under the will of Mrs. Jenkins, who died May 21, 1905. Mrs. Jenkins was a widow. By her will and codicils she devised this real estate, with other property, to the petitioners as trustees, upon trusts which have been twice before this court for construction. *Bailey v. Smith,* 214 Mass. 114. *Bailey v. Smith,* 222 Mass. 600. Certain provisions made for her brothers, William John Smith and Franklin Smith, and their widows, have terminated by reason of the death of all the beneficiaries of this description. Upon the death of William on January 10, 1910, one half the interest of the Jenkins estate in this real estate vested in remainder, subject to the trust, in Willard Pleis Smith and Helen I. Meade. *Bailey v. Smith,* 222 Mass. 600. Upon the death of the widow of William on February 17, 1915, these remainders came into absolute possession free of the trust without the necessity of any conveyance by the trustees. *Bailey v. Smith,* 222 Mass. at page 604.

Helen I. Meade having died June 23, 1910, without making any specific devise of real estate, the result was to vest absolutely in Willard Pleis Smith (her brother) an undivided one eighth of the whole property; and to vest an equal portion therein in Charles J. Meade, the surviving husband and residuary devisee and legatee of Helen, subject to the powers and authority which he had in his capacity of executor of her will. Apparently with the consent of all persons interested, the petitioners, however, continued to manage the property; they received income, paid expenses and distributed the balance of the income to the parties interested, proportionately to their interests. It also appears that the trustees with the consent of the interested parties collected the fund now in question. On July 11, 1918, (erroneously stated in the petition August 14, 1918) Meade, as executor of the will of Helen, by license of the Probate Court sold and conveyed to Willard Pleis Smith all the interest which she had in the property at the time of her death. The sum in

controversy was collected by the trustees subsequent to this conveyance.

The Probate Court has instructed the petitioners that the one eighth of the total amount received on account of the breach of the covenant in the lease to Ginn (which corresponds with the one-eighth interest conveyed by Meade) is to be paid to his grantee, Smith, and a decree has been entered accordingly, from which the respondent Meade has appealed.

The transfer of the reversion by the will of Mrs. Jenkins gave to Helen I. Meade and Willard Pleis Smith the benefits of the lessee's covenants including the covenant to repair and to return the premises in good condition. *Williams* v. *Earle,* L. R. 3 Q. B. 739. *Morgan* v. *Hardy,* 17 Q. B. D. 770. See also *King* v. *Wight,* 155 Mass. 444. The state of affairs had not changed after the death of Helen, when her husband succeeded to her interest. But before the conveyance by Meade to Smith the term of the lease had expired, the covenant to return the premises in good condition had been broken, and a claim for damages had arisen which inured personally to the various owners of the reversion proportionately to their respective interests. Meade's share in this right of action was not conveyed to Smith by the deed of the real estate. In other words, the covenant, being broken, ceased to run with the land. *Shelton* v. *Codman,* 3 Cush. 318. *Gallison* v. *Downing,* 244 Mass. 33, 36. *Martyn* v. *Williams,* 1 H. & N. 817. Notwithstanding the deed, Meade remained entitled to the one-eighth share in the proceeds of the claim. It is the contention of Smith that in equity he is entitled to this part of the fund. The recitals in the petition upon which he relies are as follows:

" Your petitioners report that the greater portion of one-fourth of the expenses of such repairs as said Ginn and his estate were, by the terms of said lease, bound to make, were in fact paid by petitioners after August 14, 1918, from the money in their possession which belonged to said Willard Pleis Smith as income.

" 9. Since April 1, 1917, your petitioners have continued to manage said real estate for the benefit of all persons in-

terested therein, and from the income thereof received between said date and the filing of this petition, they have paid out for repairs occasioned by breach of lessee's covenants made by said Ginn, a sum largely in excess of the amount covered for damage and interest, only a very small portion of which was expended between April 1, 1917, and August 14, 1918. During said period said Charles J. Meade, through his attorney from time to time, urgently requested your petitioners for payment to him of whatever sum might be due to him under the will of his wife, said Helen I. Meade, and out of consideration therefor and for the immediate financial necessities of several other beneficiaries under the will of said Jenkins, your petitioners used only such part of the income received in 1917 and 1918 as was absolutely necessary for making repairs while seeking an early settlement of said court proceedings against the trustees under the will of said Ginn, to the end that the amount of damages when collected might be used to defray expenses of repairs occasioned by breach of covenants in said lease, thus avoiding an interruption of income payments to the beneficiaries. Your petitioners deducted the expenses for said repairs from the income for the periods in which such expense was incurred, together with other expenses and charges for management of the property; and the balance of income after making said deductions was paid from time to time to the various parties interested therein in proportion to their respective shares."

The facts so stated fail to disclose any equity in favor of Smith. During the period from April 1, 1917, when the lease terminated, and the date when he purchased Meade's one-eighth interest, he received his full one eighth of the income, as did Meade. The fact that the latter urged payments of income to be made to the beneficiaries, and that repairs be postponed until after the collection of damages from Ginn's trustees, did not result in a larger part of the income being paid to him than Smith received. When the sale was made it cannot be assumed that Smith paid a price based not on the condition of the property as it then existed, but on the condition it would be in if the repairs

had been made. It is a fair inference that he paid a price based upon the value of the property as it existed at the time of sale. After his purchase, he owned one fourth of the estate and legally was required to bear one fourth of whatever repairs were made, which repairs naturally increased proportionately the value of his interest. Although before the sale it was expected that " the amount of damages when collected might be used to defray expenses of repairs," yet that was while Meade was a coöwner and while such a use of the proceeds of the claim would proportionately increase the value of his one-eighth interest. Not having bought Meade's share in the amount collected, Smith cannot equitably contend that that share should be paid to increase the value of what is now his property.

It follows that the fund belongs to the respondent Charles J. Meade, and the petitioners are instructed to pay the same to him. The decree is reversed and a decree is to be entered in accordance with this opinion.

*Ordered accordingly.*

MEMORANDUM.

On the ninth day of October, 1924, the Honorable GEORGE AUGUSTUS SANDERSON, one of the Justices of the Superior Court, was appointed a Justice of this Court. He first sat with this Court at the sitting in Boston for the Commonwealth on the twentieth day of October, 1924.