**H.O. RICHEY, Petitioner,**

v.

**STOP N GO MARKETS OF TEXAS, Respondents.**

No. C–1866.

Supreme Court of Texas.

July 20, 1983.

Charles H. Laswell, Houston, for petitioner.

Schlanger, Cook, Cohn, Mills & Grossberg, C. Henry Kollenberg, Houston, for respondents.

ROBERTSON, Justice.

H.O. Richey brought this suit against his lessee, Stop N Go Markets, for damages arising from a breach of their lease and removal of equipment from the leased premises. The trial court rendered judgment for Stop N Go and the court of appeals affirmed. 643 S.W.2d 505. We affirm the judgment of the courts below.

Richey owned two separate shopping centers in Pasadena, Texas. Stop N Go leased a space in each for the operation of a convenience store. Pursuant to the lease requirements, Richey constructed and installed a walk-in cooler at each location. Due to unprofitable operations, Stop N Go closed both stores before the expiration of the leases but continued to pay Richey rent while seeking sublessees. When Stop N Go eventually found suitable subtenants, each required the removal of the coolers before it could use the premises. Each lease contained a provision requiring the lessor's written consent prior to making "structural alterations, material changes, or additions in or to the leased premises...." Although Stop N Go requested permission from Richey prior to removing one of the coolers, he failed to respond.

While this suit was pending, Richey conveyed the two shopping centers to Depew Properties "together with all and singular the rights and appurtances thereto in anywise belonging unto the said granted...." There was no express assignment or reservation of the cause of action.

In rendering judgment for Stop N Go, the trial court found that the alterations were necessary in order to obtain sublessees and that removing the coolers actually enhanced the value of the premises. In its conclusions of law, the court states that Stop N Go did not breach the leases because Richey's refusal to allow the changes was unreasonable, that Richey was not damaged in any way, and that Richey was not entitled to recover in the capacity in which he sued.

The issue before us is whether Richey retained the pending cause of action following transfer of the property to Depew. The courts below apparently reasoned that, because Richey failed to prove any damages as a result of the equipment removal, he lost his capacity to maintain the suit. This holding confuses two distinct aspects of the case. Richey's right to maintain his cause of action following the sale of the premises

turns on the effect, if any, of the property transfer on the pending suit. His right to recover, assuming he retains the cause of action, depends on his ability to prove injury.

Stop N Go argues that Richey's cause of action for breach of the lease is not personal to him and was thus transferred with the property, citing *Restatement (Second) of Landlord and Tenant Law* § 16.2(3) (1977).[1] Stop N Go relies on this provision in an attempt to show that the lessee's obligation to return the premises in as good condition as when it received them is a covenant "running with the land," with the effect that only the transferee Depew can sue for any damages.

 The section cited does not apply to this situation because it concerns how tenant obligations under a lease are transferred from a lessor to his grantee. The present question is rather which lessor can sue for damages resulting from a breach by the tenant. A lessor/grantor may transfer benefits to his grantee, yet still retain the right to sue for breaches occurring while he was lessor. Although Texas courts have not addressed this exact issue, it is the well-settled rule in other jurisdictions that the grantee of the original lessor cannot recover for breach by a tenant which occurred before the transfer, absent an express assignment of the cause of action. *Cote v. A.J. Bayless Markets, Inc.,* 128 Ariz. 438, 626 P.2d 602 (1981); *Berman v. Sinclair Refining Co.,* 168 Colo. 332, 451 P.2d 742 (1969); *Michael v. Mitchell,* 118 Ind.App. 18, 73 N.E.2d 363 (1947); *Bailey v. Meade,* 250 Mass. 46, 144 N.E. 110 (1924); *First Nat. Bank of Kansas City v. Kavorinos,* 364 Mo. 947, 270 S.W.2d 23 (1954); *Four-G Corp. v. Ruta,* 25 N.J. 503, 138 A.2d 18 (1958); *Guidetti v. Moroze,* 102 Misc.2d 158, 423 N.Y. S.2d 140 (1979); *Wallace v. Paulus Bros.*

*Packing Co.,* 191 Or. 564, 231 P.2d 417 (1951); *Barber v. Watch Hill Fire Dist.,* 36 R.I. 236, 89 A. 1056 (1914); 3 M. Friedman, *Friedman on Leases* § 36.2 (1978); R. Schoshinski, *American Law of Landlord and Tenant* § 8.4 (1980).

This result obtains because it is the owner at the time of the breach who is injured. Transferring the grantor's right of action to compensation for the depreciated value of his property would be benefiting one who suffered no loss. Because there was no express assignment here of his cause of action to Depew, Richey retained his right to pursue the case following transfer of the property.

We must nevertheless affirm the judgment of the court of appeals because Richey has failed to prove that he suffered any damages as a result of the removal of the walk-in coolers by Stop N Go.

The judgment of the court of appeals is affirmed.

1. Section 16.2(3) provides:

The benefit of an express promissory obligation under the lease runs with the transfer of an interest in the leased property if:
   (a) the promise touches and concerns the transferred interest;
   (b) the promisor and promisee intend that the benefit is to run with the transferred interest;
   (c) the transferor does not withhold the benefit of the promise from the transferee; and
   (d) the transferor brings the transferee into privity of estate with the person obligated to perform the promise.